RYAN D. LAPIDUS (Bar No. 196838)
Email: ryan@lapiduslaw.com
DANIEL C. LAPIDUS (Bar No. 227170)
Email: dan@lapiduslaw.com
JIM D. BAUCH (Bar No. 199454)
Email: jim@lapiduslaw.com
LAPIDUS & LAPIDUS
A PROFESSIONAL LAW CORPORATION
177 SOUTH BEVERLY DRIVE
BEVERLY HILLS, CALIFORNIA 90212
TEL: 310-550-8700
FAX: 310-943-2471

Attorneys for Plaintiff U-Haul Co. of California
and Amerco Real Estate Company

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| U-HAUL CO. OF CALIFORNIA, a California corporation; and AMERCO REAL ESTATE COMPANY, a Nevada corporation,<br><br>     Plaintiffs,<br><br>   v.<br><br>CITY OF BERKELEY, a municipality;<br><br>     Defendant. | CASE No.: C08-02313 WDB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date: September 3, 2008<br>Time: 1:30 p.m.<br><br>The Honorable Wayne D. Brazil<br>Courtroom 4 |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION.......................................................    1

II.  THE CITY HAS MISREPRESENTED THE COMPLAINT............    2

III.  LEGAL STANDARDS FOR MOTIONS TO DISMISS ...............    5

IV.  THE COMPLAINT IS NOT BARRED BY RES JUDICATA ............    6
   A. There Is No Final Judgment ..........................................    7
   B. This Action Is Based on Different Primary Rights From the
      State Court Writ Proceeding ..............................................    8

V.  YOUNGER ABSTENTION DOES NOT APPLY .......................    14
   A. This Action Does Not Interfere With Ongoing
      State Proceedings ........................................................    14
   B. The Bad Faith Exception Would Apply ...............................    15

VI.  THE COMPLAINT STATES A VALID CLAIM FOR COMMERCE
      CLAUSE VIOLATIONS ....................................................    16

VII.  THE COMPLAINT STATES A VALID CLAIM FOR CEQA
      VIOLATIONS ...............................................................    18

VIII. CONCLUSION ..............................................................    20

1

## TABLE OF AUTHORITIES

2

Page(s)

3

### California Cases

4   *Agarwal v. Johnson*, 25 Cal.3d 932 (1979)...................................7, 11, 12

5   *Boeken v. Philip Morris USA, Inc.*,

6      159 Cal.App.4th 1391 (2008)...................................................6, 12

7   *Datta v. Staab*, 173 Cal.App.2d 613 (1959)........................................8

8   *Dillard v. McKnight*, 34 Cal.2d 209 (1949)........................................7

9   *Garcia v. Rehrig Interat, Inc.*, 99 Cal.App.4th 869 (2007)........................7

10  *Healing v. California Coastal Com.*,

11     22 Cal.App.4th 1158 (1994) ....................................................9, 10

12  *Hernandez v. City of Pomona*, 154 Cal.App.4th 701 (2006)......................12

13  *Lewis v. Seventeenth District Agricultural Association*,

14     165 Cal.App.3d 823 (1985).....................................................19

15  *Lynch v. Glass*, 44 Cal.App.3d 943 (1975)..........................................7

16  *Mata v. City of Los Angeles*, 20 Cal.App.4th 141 (1993).........................8, 9

17  *Vega v. Jones, Day, Reavis & Pogue*,

18     121 Cal.App.4th 282 (2004)...................... ...............................7

19

20

### Federal Cases

21  *Allen v. McCurry*,

22     449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)..........................9

23  *Blue Circle Cement, Inc. v. Board of County Commissioners*,

24     27 F.3d 1499 (10th Cir. 1994)..................................................18

25  *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261 (9th Cir. 1995)........................14

26  *Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993)......................20

27  *Colorado Manufactured Housing v. Board of County Commissioners*,

28     946 F.Supp. 1539 (D. Colo. 1996)...........................................18

    *Conley v. Gibson*, 355 U.S. 41 (1957).............................................5

*Cullen v. Fliegner*, 18 F.3d 96 (2nd Cir. 1994)..........................................16

*DCD Programs, LTD., v. Leighton*, 833 F.2d 183 (9th Cir. 1987)....................6

*Dean Milk Co. v. Madison*,
    340 U.S. 349, 71 S.Ct 295, 95 L.Ed. 329 (1951).................................17

*Eichman v. Fotomat Corporation*, 759 F.2d 1434 (9th Cir. 1985)..................7

*Flowers v. Seki*, 87 F.3d 1318 (9th Cir. 1996).......................................15

*Gibson v. Berryhill*, 411 U.S. 564 (1973)............................................15

*Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004).................................15

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)......................................4

*H.P. Hood & Sons, Inc. v. Du Mond*,
    336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949).............................17

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)...................... 15

*Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005).................5

*Kassel v. Consolidated Freightways Corp.*,
    450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981)......................17

*LaCost v. Louisiana Dept. of Conservation*,
    263 U.S. 545, 44 S.Ct. 186, 68 L.Ed.437 (1924)............................18

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).................10

*Pittston Warehouse Corp. v. City of Rochester*,
    528 F.Supp. 653, 662-63 (W.D.N.Y. 1981)...................................18

*Prudential Real Estate v. Croushore*, 204 F.3d 867 (9th Cir. 2000)...............7

*Smilecare Dendtal Group v. Delta Dental Plan of California, Inc.*,
    88 F.3d 780 (9th Cir. 1996)....................................................5

*Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991)................................5

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)..................................4

*Taylor v. Charter Medical Corporation*, 162 F.3d 827 (5th Cir. 1998)............6

*United States v. Utah Construction Co.*,
    384 U.S. 394, 86 S. Ct. 1545, 16 L.Ed.2d 642 (1966)..................... 9

*United States v. Webb*, 655 F. 2d 977, 979........................................    6

*West Lynn Creamery, Inc. v. Healy*,

    512 U.S. 186, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994).................    17

*Younger v. Harris*, 401 U.S. 37 (1971)...........................................    14


## California Statutes

California Code of Civil Procedure § 1094.5.....................................    9


## Federal Statutes

Federal Rule of Civil Procedure 8(a)............................................    4

Federal Rule of Civil Procedure 12(b)(6).........................................    5

Federal Rule of Civil Procedure 15(a)............................................    6

Federal Rule of Evidence 201(b)..................................................    6

28 U.S.C. § 1738................................................................    7


## Other Authorities

California Environmental Quality Act Guidelines § 15300.2(c).................    19

California Environmental Quality Act § 15321.................................    18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    **INTRODUCTION**

The City of Berkeley has abused its power to discriminate against Plaintiffs in violation of their civil rights. Now the City seeks to avoid being held accountable for its conduct, asking this Court to dismiss the Complaint before it has heard a single piece of evidence. The City's motion to dismiss mischaracterizes the allegations of the Complaint, omits key material facts, and misstates the law. It also contains numerous factual assertions, which are improper on a motion to dismiss and should be disregarded.

Specifically, the City's motion is directed at a straw man version of the Complaint. The City repeatedly characterizes the Complaint as being solely directed at the City's revocation of U-Haul's Use Permit. In fact, the Complaint alleges a pattern of unconstitutional and improper behavior by the City, of which the Use Permit revocation is but one example.

The City also disingenuously accuses Plaintiffs of failing to disclose to this Court the existence of a state court writ of mandate proceeding in which U-Haul challenged the revocation of the Use Permit. In fact, as the City well knows, U-Haul filed concurrently with its Complaint (and served on the City) a Notice of Other Action specifically discussing that action.

Furthermore, the City wrongly asserts that U-Haul failed to file a timely appeal of the state court judgment in the writ proceeding. In fact, U-Haul filed an appeal, and the California Court of Appeal has rejected the City's argument that the appeal was untimely.

Like its factual contentions, the City's legal contentions are flawed.

The City's assertion that the Complaint is barred by res judicata is doubly wrong. First, there is no final judgment for res judicata purposes, because California law (which governs the finality of California judgments) provides that

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS – CASE NO. C08-2313 WDB**
- 1

1    res judicata cannot be based upon a judgment that is on appeal.  Second, this action

2    seeks to vindicate different primary rights (e.g. the right to be free from

3    discrimination and retaliation by state actors) than those that were at issue in the

4    state court writ proceeding.[1]

5         The City's *Younger* abstention argument is without merit because *Younger* is

6    not applicable here.  There is no ongoing state proceeding with which this action

7    would interfere.  In addition, the Complaint alleges that the City has acted in bad

8    faith and to harass Plaintiffs, which is a well-established exception to *Younger*

9    abstention.

10        The City's attack on the Commerce Clause claims of the Complaint fails

11   because it mischaracterizes the Complaint, misstates the law, and improperly asks

12   the Court to resolve disputed issues of fact on a motion to dismiss.

13

14        Finally, the sixth cause of action for violation of the California

15   Environmental Quality Act states a valid claim because the Complaint alleges

16   sufficient facts to invoke one of the regulatory exceptions to the "categorical

17   exemption" on which the City claims to have relied, and the Complaint was timely

18   filed.

19   ## II.    THE CITY HAS MISREPRESENTED THE COMPLAINT

20        The City has falsely characterized the Complaint as a mere "collateral

21   attack" on the state court writ proceeding, and engages in selective quotation and

22   selective overlooking of the actual allegations of the Complaint.

23        In fact, the City does not even believe its own assertion.  After representing

24   to this Court that this action is a "collateral attack," the City recently admitted to

25   the Alameda County Superior Court that in fact, this action "does not – and could

26

27   _____

[1] The City's motion fails for a third reason as to plaintiff Amerco Real Estate Company, because

28   that entity was not a party to, nor in privity with a party to the state court action.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION TO DISMISS – CASE NO. C08-2313 WDB**

1  not – seek to directly overturn the City's revocation of U-Haul's Use Permit."
2  Request for Judicial Notice, Ex. A.

3      The Complaint speaks for itself, and it is the actual allegations, not the
4  City's mischaracterization of it, that the Court must consider in ruling on the
5  motion.  Contrary to the City's assertions, the Complaint is based on more than
6  simply the City's revocation of U-Haul's Use Permit.  Instead, it alleges an entire
7  course of conduct directed against Plaintiffs.  *See* Complaint, ¶ 1 ("Among other
8  things, Defendant has attempted to impose unlawful, disproportionate, and punitive
9  sanctions on U-Haul, unreasonably revoked U-Haul's use permit to operate its
10  facility, discriminated against U-Haul and its customers, and punished and
11  retaliated against U-Haul for asserting its First Amendment rights to challenge
12  Defendant's improper conduct."); ¶ 22 ("Defendant recently began and carried out
13  a campaign of improper, unfair, and discriminatory conduct towards U-Haul.").

14      That course of conduct consists of much more than one City Council
15  decision to revoke a Use Permit.  *See, e.g.*, Complaint ¶ 23 ("For example,
16  Defendant has issued citations to U-Haul without legal or factual bases.
17  Defendant's officials even personally delivered these citations rather than simply
18  mailing them, for the purpose of intimidation and disruption of U-Haul's
19  operations.  Defendant arbitrarily and without legitimate justification treats U-Haul
20  worse than similar situated businesses, including car rental companies and car
21  share operators, such as ZipCar, FlexCar and City Car Share, that are allowed by
22  the Defendant to park their cars on City streets and other public locations including
23  public parking lots without the limitation or the unfair restrictions and conditions
24  imposed on U-Haul."); ¶ 26 (City officials "have informed U-Haul that the City
25  does not want U-Haul to operate in the area, and that it will not approve any permit
26  application or request for a variance for which U-Haul might apply.").

27
28

1    Indeed, the Complaint makes clear that the City's wrongful conduct began
2    before the Use Permit was revoked, and that the revocation was in fact just one
3    example of the City's retaliation against Plaintiffs for standing up to the City's
4    abuse. *See* Complaint, ¶ 24 ("U-Haul successfully challenged some of Defendant's
5    conduct. Defendant *responded* by *further* unfair and discriminatory acts in order to
6    punish and retaliate against U-Haul for exercising its First Amendment right to
7    petition for a redress of grievances. *Among other things*, Defendant revoked U-
8    Haul's Use Permit No. 7575.") (emphasis added).

9    The Federal Rules of Civil Procedure require only notice pleading; a
10   plaintiff is required only to allege sufficient facts to put the defendant on notice of
11   the nature of the claims asserted against it, not to provide a laundry list of every
12   piece of evidence that supports those claims. *See* Fed. Rule Civ. Proc. 8(a) ("A
13   pleading which sets forth a claim for relief, whether an original claim,
14   counterclaim, cross-claim, or third-party claim, shall contain...(2) a short and plain
15   statement of the claim showing that the pleader is entitled to relief...").

16   A plaintiff need only "give the defendant fair notice of what the plaintiff's
17   claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534
18   U.S. 506, 512 (2002). Indeed, "[g]iven the Federal Rules' simplified standard for
19   pleading, '[a] court may dismiss a complaint only if it is clear that no relief could
20   be granted under any set of facts that could be proved consistent with the
21   allegations." *Id.*, quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).
22   Moreover, "[i]f a pleading fails to specify the allegations in a manner that provides
23   sufficient notice, a defendant can move for a more definite statement under Rule
24   12(e) before responding." *Id.*

25   Nonetheless, if necessary, Plaintiffs can amend the Complaint to allege
26   additional specific facts and examples of the City's wrongful conduct. Among
27   other things, City officials have conspired with each other and with neighborhood
28

---

1  residents to use the zoning ordinance and nuisance actions as a pretext to force
2  Plaintiffs' longstanding business out of the neighborhood and replace it with a
3  business they deem more "desirable"; the City's police department has responded
4  inadequately to – or outright ignored – Plaintiffs' repeated reports of theft,
5  trespassing, and loitering; the City then disingenuously attempted to use the
6  loitering problem that it refused to address as evidence against Plaintiffs; the City
7  ignored the findings of its own administrative hearing officer, and overruled the
8  recommendations of its own zoning staff in its zeal to punish Plaintiffs; refused to
9  issue zoning certificates to which Plaintiffs were entitled under the law; and has
10  attempted to stir up public sentiment against Plaintiffs.

11  ### III.   LEGAL STANDARDS FOR MOTIONS TO DISMISS

12  The legal standard applicable to motions to dismiss is well-settled.  When a
13  claim is challenged under Federal Rule of Civil Procedure 12(b)(6), the court
14  presumes that all well-pleaded allegations are true, resolves all doubts and
15  inferences in the pleader's favor, and views the pleading in the light most favorable
16  to the non-moving party. *See Jackson v. Birmingham Board of Education,* 544
17  U.S. 167, 171 (2005) ("Because [the] claim was dismissed under Federal Rule of
18  Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be
19  granted, 'we must assume the truth of the material facts as alleged in the
20  complaint."), quoting *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325 (1991);
21  *Smilecare Dental Group v. Delta Dental Plan of California, Inc.,* 88 F.3d 780,
22  782-783 (9th Cir. 1996) ("All allegations of material fact are taken as true and
23  construed in the light most favorable to the plaintiff.");  *Conley v. Gibson,* 355 U.S.
24  41, 45-46 (1957) ("In appraising the sufficiency of the complaint we follow, of
25  course, the accepted rule that a complaint should not be dismissed for failure to
26  state a claim unless it appears beyond doubt that the plaintiff can prove no set of
27  facts in support of his claim which would entitle him to relief.").
28

1    Although the court may take judicial notice of the contents of files of
2  another court, it cannot take judicial notice of the truth of the assertions contained
3  in those documents. *See* Fed.R.Evid. 201(b); *Taylor v. Charter Med. Corp.*, 162
4  F.3d 827, 828 (5th Cir. 1998) (factual findings of another court are not susceptible
5  to judicial notice). Thus, to the extent the City asks the Court to rely on factual
6  allegations contained in state court or other proceedings, the Court must decline.

7    Furthermore, even if the motion to dismiss is granted, the plaintiff should be
8  freely granted leave to amend. Federal Rule of Civil Procedure 15(a) provides that
9  a party may amend their complaint once "as a matter of course" before a
10  responsive pleading is served, after which the "party may amend the party's
11  pleading only with the opposing party's written consent or the court's leave." Fed.
12  R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.*
13  "In exercising its discretion 'a court must be guided by the underlying purpose of
14  Rule 15—to facilitate decision on the merits rather than on pleadings or
15  technicalities.'" *DCD Programs, LTD., v. Leighton*, 833 F.2d 183, 186 (9th Cir.
16  1987) (quoting *United States v. Webb*, 655 F.2d 977, 979). Thus, "[r]ule 15's
17  policy of favoring amendments to pleadings should be applied with extreme
18  liberality…[and such] liberality…is not dependent on whether the amendment will
19  add causes of action or parties…[provided that] amendment of the complaint does
20  not cause the opposing party undue prejudice, is not sought in bad faith, and does
21  not constitute an exercise in futility." *Id.* (Internal citations omitted).

22  ## IV.    THE COMPLAINT IS NOT BARRED BY RES JUDICATA

23    The City admits in its motion that res judicata requires three elements: (1) a
24  final judgment on the merits in the prior proceeding; (2) the present proceeding is
25  on the same cause of action as the prior proceeding; (3) the parties in the present
26  proceeding or parties in privity with them were parties in the prior proceeding. *See*
27  City's Memorandum, p. 5; *Boeken v. Philip Morris USA, Inc.*, 159 Cal.App.4[th]
28

---

1391, 1397-98 (2008).

Here, the first two elements are missing as to both Plaintiffs.[2]

### a. **There Is No Final Judgment**

The preclusive effect of a state court judgment is determined by the law of the state that issued it. *See* 28 U.S.C. § 1738 (judicial proceedings of state courts "shall have the same full faith and credit in every court as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."); *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985) ("Under 28 U.S.C. Sec. 1738, we apply California law" to determine preclusive effect of California judgment); City's Memorandum, p. 5 (agreeing that California law applies).

"Under California law . . . a judgment is not final for purposes of res judicata during the pendency of and until the resolution of an appeal." *Eichman*, 759 F.2d at 1439, citing *Agarwal v. Johnson*, 25 Cal.3d 932, 954 n.11 (1979) ("Under the California rule, the instant judgment . . . is not final for purposes of res judicata

---

[2]  The third element is also missing as to plaintiff Amerco Real Estate Company, because that entity was neither a party to, nor in privity with a party to, the state court writ proceeding. None of the reasons offered by the City suffices to show privity between Amerco Real Estate Company and U-Haul Company of California. A business relationship does not confer privity. *See Dillard v. McKnight*, 34 Cal.2d 209 (1949) (judgment against one partner did not bind other partners in subsequent proceeding); *Prudential Real Estate v. Croushore*, 204 F.3d 867 (9th Cir. 2000) (applying California law; judgment against franchisee does not bind franchisor); *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.App.4[th] 282, 298-299 (2004) (fraud claim by shareholder was not barred by identical prior lawsuits brought by other former shareholders represented by the same counsel). Nor does a common interest in property rights justify binding a non-party to a lawsuit. *See Lynch v. Glass*, 44 Cal.App.3d 943, 949 (1975) (prior judgment against property developer finding no public easement did not bind property owners claiming same right). Accordingly, due process, as well as California res judicata law, bars the City from applying the writ proceeding judgment against Amerco Real Estate Company. *See Garcia v. Rehrig Interat, Inc.*, 99 Cal.App.4[th] 869, 877, (2007) ("This requirement of identity of parties or privity is a requirement of due process of law.").

---

1   during the pendency of and until the resolution of the appeal.").[3]

2   Here, U-Haul filed a Notice of Appeal of the state court judgment on June 6,

3   2008. The City falsely asserts that "U-Haul's time to appeal that judgment expired

4   on April 8, 2008." City's Memorandum, p. 2. In fact, the California Court of

5   Appeal rejected the City's argument and denied its motion to dismiss the appeal as

6   untimely. *See* Plaintiffs' Request for Judicial Notice, Exhs. B-D.

7   Thus, the judgment in the state court writ proceeding is on appeal, and

8   cannot have any res judicata effect. This alone is sufficient to invalidate the City's

9   res judicata argument.

10   ### b. **This Action Is Based On Different Primary Rights From the**
11   ### **State Court Writ Proceeding**

12   The City's res judicata argument also fails for a second, independent reason,

13   in that this action is based on different primary rights from those presented in the

14   state court writ proceeding.

16   As set forth in detail in Section II above, the City selectively quotes from the

17   Complaint and ignores key allegations so that it can characterize the Complaint as

18   a "collateral attack on the state court judgment." City's Memorandum, p. 2.

19   In fact, the two proceedings are very different. The state court judgment was

20   a denial of a petition for a writ of mandate; it is "technically not regarded as an

21   action at all. It is, instead, described as a special proceeding." *Mata v. City of Los*

22   *Angeles*, 20 Cal.App.4[th] 141, 149 (1993). Such a special proceeding involves a

23   deferential standard of review, and decides only whether there is sufficient

24   evidence in the administrative record to support the administrative agency's (in this

26   _____

27   [3] Nor is U-Haul of California's voluntary dismissal without prejudice of its complaint in that action a final judgment for res judicata purposes. *See Datta v. Staab*, 173 Cal.App.2d 613, 620 (1959) (where dismissal is not in exchange for some consideration, it is not a final judgment

28   for res judicata purposes).

_____

instance, the City Council's) determination. *See* California Code of Civil Procedure § 1094.5.

In *Mata*, the California Court of Appeal held that the plaintiff, a police officer who alleged he was wrongfully terminated, was not barred from pursuing his civil rights action by reason of his prior writ petition seeking reinstatement. *See* 20 Cal.App.4th at 149.

In the writ proceeding, U-Haul was not permitted to introduce any evidence that was not in the administrative record – a record generated at a City Council meeting where witnesses were not sworn, "testimony" was by narrative statement and/or hearsay, subpoenas could not be issued, and other basic due process protections were not available.

In *Healing v. California Coastal Com.*, 22 Cal.App.4th 1158, 1171 (1994), the California Court of Appeal specifically held that an adverse decision on a petition for writ of mandamus did not bar a takings claim. *See id.*, 22 Cal.App.4th at 1171 ("review by way of administrative mandate is not an adequate substitute for a court trial of the takings issues raised by an inverse condemnation claim.").

The *Healing* court explained:

> "The question, then, is whether a trial court can determine taking liability based upon an administrative record created under circumstances where, as the Commission concedes, witnesses are not sworn, testimony is not presented by means of direct or cross-examination but rather by narrative statements, and the Commission does not have the authority to issue subpoenas or compel anyone to attend its hearing. Our review of the cases relied upon by the Commission does not support the Commission's position that an administrative mandate hearing is a satisfactory substitute for a trial."

*Id.*, citing *United States v. Utah Constr. Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) (administrative agency's factual determinations have collateral estoppel effect only if the agency was acting in a judicial capacity); *Allen*

1    *v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)

2    (administrative agency's factual determinations satisfy basic concepts of due

3    process only if the party aggrieved had a full and fair opportunity to litigate his

4    claim).

5         "Time has shown, we think, that although a landowner may be required to

6    exhaust his administrative remedies by giving the Commission an opportunity to

7    take the appropriate action, and to pursue a petition for a writ of mandate to afford

8    the court an opportunity to declare a condition or a permit denial invalid, neither of

9    those procedures provides a satisfactory substitute for an evidentiary trial on the

10   takings issues." *Id.*, 22 Cal.App.4th at 1177.

11        In addition to the due process concerns, the *Healing* court noted that the

12   issues on the writ petition were not the same as those presented by an inverse

13   condemnation claim. *See id.* ("the mere fact that the regulation at issue has a

14   legitimate public purpose is not a sufficient reason to deny compensation to the

15   property owner whose land is rendered useless by the regulation.")

16        "To win its case on the taking issue (as opposed to what it takes to prove that

17   it properly denies a permit in the first instance), the Coastal Commission would

18   have to do more than proffer the legislature's declaration that the use Healing

19   desires is inconsistent with the public interest, or the conclusory assertion that

20   Healing's proposed use might somehow injure the land of another. The

21   Commission, just because it says so, cannot transform private property without

22   compensation. To the contrary, the Commission can defeat Healing's takings

23   claim only if it is able to show that, by its refusal to issue a permit, it is taking

24   nothing from Healing. [¶] These are questions for a court of law to decide at an

25   evidentiary trial, not by mandamus review of an administrative record of

26   proceedings where the parties' right to present evidence was limited by the very

27   nature of the administrative process." *Id.*, 22 Cal.App.4th at 1174, citing *Lucas*.

Here, too, the issues and evidence presented in this action are very different from the writ proceeding behind which the City seeks to hide. The writ proceeding merely addressed the question of whether the City Council's decision to revoke the Use Permit was supported by the evidence in the administrative record. As discussed in *Healing*, that is a different question from whether a taking has occurred.

In addition, the Complaint herein alleges more than just a takings claim. The writ proceeding did not, and could not, decide whether the City's other actions and inactions alleged herein were proper or – as Plaintiffs assert, and as the Court must accept as true for purposes of a motion to dismiss – discriminatory and retaliatory in violation of the Fifth and Fourteenth Amendments and the Commerce Clause of the United States Constitution, and/or the Civil Rights Act. Nor did the writ proceeding, or could it, address whether the City complied with the California Environmental Quality Act. These claims present different factual and legal questions that call for evidence that was not available in the writ proceeding.

Even if the claims made in the Complaint were based on that same facts – which they are not – they would still not be subject to res judicata, because they involve different primary rights. *See Agarwal*, 25 Cal.3d at 954 ("Under the 'primary rights' theory adhered to in California it is true there is only a single cause of action for the invasion of one primary right. But the significant factor is the harm suffered; that the same facts are involved in both suits is not conclusive.") (citations omitted).

In *Agarwal*, the California Supreme Court held that a federal judgment against the plaintiff on his federal employment discrimination claims did not bar his state court action against the employer and individual supervisors for defamation and intentional infliction of emotional distress. "While the federal

action was based on the same underlying facts as the instant case, it does not follow that the federal judgment is res judicata." *Id.*, 25 Cal.3d at 954.

Similarly, in *Hernandez v. City of Pomona*, 145 Cal.App.4[th] 701 (2006), the decedent Hernandez had been shot by police officers of the City of Pomona. His estate and family sued in federal court for violations of Hernandez's civil rights, but a jury found in the City's favor. The plaintiffs then filed an action in state court asserting causes of action for negligence. The California Court of Appeal held that the federal judgment did not bar the plaintiffs' state law negligence claims, because even though they were based on the same facts, the primary rights were different.

"The primary right at issue in the section 1983 action was Hernandez's right under the Fourth Amendment to be free from unreasonable seizure of his person. The primary right in the negligence action is Hernandez's right to be free from injury to his person. That some of the same facts are involved in both actions is not determinative; the significant factor is the nature of the harm." *Id.* at 712 (footnotes omitted).

"The nature of the harm in the former action was the violation of a constitutionally protected right. The nature of the harm in the latter action is the violation of a common law right. As the United States Supreme Court has observed, the federal Constitution and traditional tort law 'do not address the same concerns.'" *Id.* at 713 (footnote omitted).

Here, U-Haul's writ petition was brought to challenge violation of the primary right that administrative decisions must be supported by evidence in the record. This action seeks to vindicate violations of a number of different primary rights: constitutional rights to interstate commerce, to petition the government for redress of grievances without retaliation, to be free from discrimination, to receive

equal protection under the law, as well as to enforce the provisions of the California Environmental Quality Act.

The City provides no relevant authority to the contrary. It does not cite any case where a petition for writ of mandate was held to be the same primary right as a civil rights, constitutional, or environmental claim. The City relies solely on *Boeken v. Philip Morris USA, Inc.*, 159 Cal.App.4th 1391 (2008), which is clearly distinguishable. In *Boeken*, the plaintiff dismissed with prejudice her loss-of-consortium claim against the defendant tobacco company that allegedly caused her husband's terminal cancer. Her husband (who had already collected a $55.5 million judgment from the same defendant) then died, and four years later the plaintiff filed a new suit alleging wrongful death. The California Court of Appeal held that the prior dismissal with prejudice barred the wrongful death claim, because the wrongful death claim was based on the same primary right – the right to her husband's "love, companionship, comfort, affection, society, solace, and moral support." *Id.*, 159 Cal.App.4th at 1396. The Court of Appeal noted that "plaintiff sought in her wrongful death action to recover against the same defendant for the same injury caused by the same conduct, as in her prior loss-of-consortium action." *Id.*

Here, by contrast, this action addresses different injuries (an unsupported administrative decision, compared to violation of constitutional and other rights), caused by different conduct (the decision to revoke the Use Permit, as compared to an entire course of discriminatory conduct beginning before and continuing after that one action), and different relief (U-Haul's writ petition did not seek any monetary damages,[4] let alone the same damages authorized by the claims made

---

[4] U-Haul joined its petition for a writ of mandate with a complaint for inverse condemnation, but that claim was never adjudicated on the merits and was voluntarily dismissed without prejudice.

here).

## V.    <u>YOUNGER ABSTENTION DOES NOT APPLY</u>

The City's *Younger* abstention argument is based on a distortion of both *Younger* doctrine and the Complaint itself. Moreover, even if *Younger* were otherwise applicable, it is well-established that *Younger* may not be invoked where – as is alleged here -- the state is engaging in harassment or other bad faith conduct.

### a. <u>This Action Does Not Interfere With Ongoing State Proceedings</u>

Contrary to the City's portrayal, the existence of a past or present state court action between two parties does not bar the party from ever bringing an otherwise valid claim in federal court. Under the City's theory, *Younger* would bar a federal civil rights lawsuit against a Berkeley police officer who shoots a driver as long as the driver was also issued a traffic citation in state court. In fact, under the City's interpretation, any driver who has ever received a speeding ticket that was not appealed in state court will never be able to seek relief against the City in federal court on *any* matter whatsoever.

Such an absurd result cannot be the law, and indeed it is not the law. The purpose of *Younger* is to prevent "federal court interference with state court proceedings." *Younger v. Harris*, 401 U.S. 37, 43 (1971).

"[A]bstention from the exercise of federal jurisdiction is considered an extraordinary and narrow exception to the duty of a District Court to adjudicate the controversy properly before it. Accordingly, the balance must always tip heavily in favor of exercising jurisdiction." *Bud Antle. Inc. v. Barbosa*, 45 F.3d 1261, 1272 (9th Cir. 1995).

1    There must be a sufficient connection between the federal action and an

2 ongoing state court proceeding. *See Gilbertson v. Albright*, 381 F.3d 965, 979 n.14

3 (9th Cir. 2004) (abstention is not warranted where "the underlying federal claims

4 were 'wholly unrelated' to the issues in the pending state proceeding.").

5    Here, the City fails to articulate any such connection, nor does it explain *how*

6 this action would "interfere" with any state court proceeding. Presumably the City

7 is resorting to its false characterization of the Complaint as a mere "collateral

8 attack" on the state court writ proceeding. But as the City recently told the

9 Alameda County Superior Court, this action "does not – and could not – seek to

10 directly overturn the City's revocation of U-Haul's Use Permit."

11    As shown in Section II, this action is based on a series of actions and

12 inactions by the City that have violated multiple rights of the Plaintiffs. The City

13 cannot simply point to a state court proceeding in which U-Haul sought to exhaust

14 its administrative remedies and claim that it is not exempt from answering for its

15 violations of those rights.

16
17              b. **The Bad Faith Exception Would Apply**

18    *Younger* abstention is not applicable in actions which allege – as the

19 Complaint here does – that the state court proceedings were brought to harass. *See*

20 *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)

21 ("*Younger*, and its civil counterpart which we apply today, do of course allow

22 intervention in those cases where the District Court properly finds that the state

23 proceeding is motivated by a desire to harass or is conducted in bad faith, or where

24 the challenged statute is 'flagrantly and patently violative of express constitutional

25 prohibitions in every clause, sentence and paragraph, and in whatever manner and

26 against whomever an effort might be made to apply it.'"); *Gibson v. Berryhill*, 411

27 U.S. 564 (1973) (affirming district court's refusal to abstain; state optometry board

28 was acting on bias and self interest); *Flowers v. Seki*, 87 F.3d 1318 (9th Cir. 1996)

---

1  (no abstention where defendants acted in bad faith); *Cullen v. Fliegner*, 18 F.3d 96,

2  104 (2nd Cir. 1994) ("[A] showing of retaliatory or bad faith prosecution

3  establishes irreparable injury for the purposes of the Younger doctrine. . . .").

## VI.    THE COMPLAINT STATES A VALID CLAIM FOR COMMERCE CLAUSE VIOLATIONS

In its attack on the Complaint's Commerce Clause claim, the City engages in some creative slight-of-hand.

First, it falls back on its favorite tactic of distorting the Complaint. The City claims that the "fourth cause of action alleges that the City – by revoking U-Haul's use permit – 'has placed an unreasonable burden on interstate commerce . . . and has discriminated against out of state residents.'" City's Memorandum, p. 12, quoting Complaint ¶ 45. There is a good reason why the City did not quote the beginning of paragraph 45 of the Complaint. It alleges that "[b]y *the acts and omissions described herein*, Defendant has placed an unreasonable burden on interstate commerce. . . ." Complaint, ¶ 45 (emphasis added). As explained in Section II above, the Complaint alleges acts and omissions beyond simply the decision to revoke the Use Permit.

Second, the City adopts the bold tactic of asking the Court to dispense with the formalities of evidence and due process and simply assume that the City is right. The City cites several cases upholding zoning and other local ordinances from attack on Commerce Clause grounds, and then apparently expects the Court to conclude that therefore *no* state action that has any connection whatsoever to a zoning ordinance could possibly violate the Commerce Clause.

Once again, the City is flailing away at a straw man. Plaintiffs have not alleged that the City's zoning ordinance is facially invalid under the Commerce Clause. Rather, Plaintiffs allege that the City's overall illegal and discriminatory

campaign against U-Haul has placed an unreasonable burden on interstate commerce. *See* Complaint, ¶¶ 43-46. Acts that are by themselves constitutional may be unconstitutional if they are part of an overall scheme to burden interstate commerce. *See West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) (by themselves, neither a neutral nondiscriminatory tax on all milk sales, nor a subsidy to in-state dairy farmers would violate the Commerce Clause, but the combined scheme was "clearly unconstitutional"). Similarly, an otherwise valid law may be applied in a way that violates the Commerce Clause. *See H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949) (denial of license was an invalid application of law).

Simply put, the City cannot discriminate against interstate commerce and then simply say "the zoning ordinance made me do it" and escape consequences.

Courts are not so naïve as the City suggests, and do not simply accept a defendant's protestation of its own good motives. For example, while acknowledging the "unquestioned power to protect the health and safety of its people," the United States Supreme Court overturned a local ordinance that required milk sold in the city to be processed at local pasteurization plants. "A different view, that the ordinance is valid simply because it professes to be a health measure, would mean that the Commerce Clause of itself imposes no limitations on state action other than those laid down by the Due Process Clause, save for the rare instance where a state artlessly discloses an avowed purpose to discriminate against interstate goods." *Dean Milk Co. v. Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951); *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981) ("the incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack.").

1  Furthermore, these principles have been held applicable to implementation

2  and enforcement of zoning and similar ordinances. *See Blue Circle Cement, Inc. v.*

3  *Board of County Commissioners*, 27 F.3d 1499, 1511 (10th Cir. 1994) (the

4  "dormant Commerce Clause . . . prohibits a state or local 'statute [that] regulates

5  evenhandedly to effectuate a legitimate public interest' if it imposes a burden on

6  interstate commerce that is 'clearly excessive in relation to the putative local

7  benefits.'"); *Pittston Warehouse Corp. v. City of Rochester*, 528 F.Supp. 653, 662-

8  63 (W.D.N.Y. 1981) (holding that zoning ordinances were unconstitutional and

9  invalid under Commerce Clause; "it has long been established that a state or

10  locality 'may not enforce any law, the necessary effect of which is to prevent,

11  obstruct, or burden interstate commerce.'"), citing *LaCost v. Louisiana Dept. of*

12  *Conservation*, 263 U.S. 545, 44 S.Ct. 186, 68 L.Ed.437 (1924); *Colorado*

13  *Manufactured Housing v. Board of County Commissioners*, 946 F.Supp. 1539,

14  1555 (D. Colo. 1996) (denying summary judgment because material issue of fact

15  existed as to comparison of burden on interstate commerce to local benefits).

16

17  **VII.  THE COMPLAINT STATES A VALID CLAIM FOR CEQA**

18  **VIOLATIONS**

19  In its attack on the sixth cause of action for violation of the California

20  Environmental Quality Act (CEQA), the City once again appears to expect the

21  Court to simply rubber-stamp what the City has "decided."

22  The City states that "[b]ecause the City's action in revoking U-Haul's use

23  permit was categorically exempt from CEQA, no analysis was required." City's

24  Memorandum, p. 15. However, the fact that the City allegedly determined that its

25  action was "categorically exempt" does not immunize it from judicial review.

26  The same CEQA Guidelines that establish the "categorical exemptions,"

27  including the exemption upon which the City relies (§ 15321), also provide for

28

exceptions to those exemptions. Among other things, "[a] categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." CEQA Guidelines § 15300.2(c).

Here, Plaintiffs allege that, among other things, "[t]he availability of U-Haul vehicles acts to reduce the number of large capacity vehicles in and around Berkeley. Each U-Haul truck helps keep nineteen privately owned large capacity vehicles off the road. This in turn reduces greenhouse gas emissions." Complaint, ¶ 19. The Complaint further alleges that "U-Haul's location at San Pablo . . . is key to U-Haul's role in reducing carbon dioxide emissions." *Id.*, ¶ 21. Accordingly, the City's actions have "caused an increase in carbon dioxide emissions and harmful greenhouse gas emissions by requiring residents seeking the use of moving trucks . . . to instead buy such trucks or obtain them from dealers at more remote locations." *Id.*, ¶ 54. These and other allegations of the Complaint, *see, e.g.*, ¶¶ 1, 9, 16-20, which must be assumed to be true for purposes of this motion, are more than sufficient to establish a "reasonable possibility" of a "significant effect on the environment." Thus, Plaintiffs have stated a valid cause of action under CEQA. *See Lewis v. Seventeenth District Agricultural Assoc.*, 165 Cal.App.3d 823, 831 (1985) (affirming cancellation of agricultural associations' contract with auto racing association; categorical exemption did not apply because the existence of a nearby residential area constituted an "unusual circumstance" sufficient to invoke 15300.2(c)).

The City's assertion that the sixth cause of action is time-barred is also wrong. Although the City Council voted to revoke the Use Permit on October 10, 2007, that decision was stayed by the Alameda County Superior Court, which operated to toll the limitations period. Thus this action was filed well within the

1   180 day limitations period. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275
2   (9th Cir. 1993) (dismissal can be granted "only if the assertions of the complaint,
3   read with the required liberality, would not permit the plaintiff to prove that the
4   statute had been tolled.") (internal quotations omitted).

5   ## VIII. **CONCLUSION**

6   For the reasons set forth above, the Court should deny the City's motion.  In
7   the alternative, if the motion is granted in whole or in part, the Court should grant
8   Plaintiffs leave to file an amended complaint.

11   DATED: August 13, 2008        LAPIDUS & LAPIDUS
12                                 A PROFESSIONAL LAW CORPORATION

15                                 JIM D. BAUCH
                                   Attorneys for Plaintiffs U-Haul Co. of California
16                                 and Amerco Real Estate Company