1    ZACH COWAN, Acting City Attorney (SBN 96372)
     LYNNE BOURGAULT, Deputy City Attorney (SBN 180416)
2    2180 Milvia Street, 4th Floor
     Berkeley, CA  94704
3    lbourgault@ci.berkeley.ca.us
     Phone:  510.981.6950
4    Fax:     510.981.6960

5    Attorneys for Defendant
     CITY OF BERKELEY
6

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA
                          OAKLAND DIVISION
10

11   U-HAUL CO. OF CALIFORNIA, a California        CASE NO. C08-02313 WDB
     corporation; and AMERCO REAL ESTATE
12   COMPANY, a Nevada corporation;               DEFENDANT CITY OF BERKELEY'S
                                                  MEMORANDUM OF POINTS AND
13                                                AUTHORITIES IN REPLY TO U-HAUL'S
                    Plaintiffs,                   OPPOSITION TO MOTION TO DISMISS
14
            v.
15                                                Date:     September 3, 2008
                                                  Time:     1:30 p.m.
16   CITY OF BERKELEY, a municipality;            The Honorable Wayne D. Brazil
                                                  Ctrm:     4
17                  Defendant.

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT........................................................................................................................ 1

      I.      RES JUDICATA BARS ALL BUT TWO OF U-HAUL'S CLAIMS
           AGAINST THE CITY ....................................................................................... 1

           A.     Pending Appeal in State Court Action............................................... 1

           B.     U-Haul Provides No Opposition to the Argument that It Could
                  Have and Should Have Brought All of its Claims Against the
                  City in State Court ............................................................................. 3

           C.     U-Haul Offers No Defense to the City's Demonstration that Amerco
                  RE is in Privity to U-Haul for *Res Judicata* Purposes..................................... 4

      II.     U-HAUL'S COMPLAINT SHOULD BE DISMISSED BASED UPON
           THE *YOUNGER* DOCTRINE ......................................................................... 6

           A.     U-Haul's Claim That *Younger* Abstention Does Not
                  Apply is Without Merit...................................................................... 6

            B.     The Bad Faith Exception to the Younger Doctrine is Inapplicable................. 7

      III.    U-HAUL'S FOURTH AND FIFTH CAUSES OF ACTION FAIL
           TO STATE A CLAIM....................................................................................... 9

           A.     U-Haul Has Failed to State a Claim for Violation of the Commerce Clause .. 9

           B.     U-Haul Has Failed to State a Claim for Violation of CEQA ........................ 11

CONCLUSION................................................................................................................... 13

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Federal Cases**

*Berryhill v. Gibson*, 331 F. Supp. 122  (1971) ............................................................... 8

*Cervantes v. City of San Diego,* 5 F.3d 1273 (9th Cir. Cal. 1993).................................................... 11

*Cullen v. Fliegner*, 18 F. 3d 96 (2d Cir. 1994) .............................................................. 7, 8

*Flowers v. Seki,* 87 F.3d 1318 (9th Cir. 1996)............................................................... 8

*Gibson v. Berryhill*, 411 U.S. 564 (1973)..................................................................... 7, 8

*Gilbertson v. Albright,* 381 F.3d 965 (9th Cir. 2004)............................................................ 6

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ............................................................... 7

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867 (9th Cir. Cal. 2000) .......... 5

**State Cases**

*Associated Convalescent Enterprises v. Carl Marks & Co., Inc*. 33 Cal.App.3d 116 (1973)............. 2

*Boeken v. Philip Morris, USA, Inc.*, 159 Cal. App. 4th 1391 (2008) ................................................ 3, 4

*Cook v. Stewart McKee & Co.,* 68 Cal.App.2d 758 (1945)............................................................ 2, 3

*Datta v. Staab*, 173 Cal. App. 2d 613 (1959) ............................................................. 2, 3, 5

*Dillard v. McKnight*, 34 Cal. 2d 209 (1949)..................................................................... 5

*Hensler v. City of Glendale* 8 Cal.4[th] 1 (1994) ................................................................. 2

*Lynch v. Glass*, 44 Cal. App. 3d 943 (1975)..................................................................... 5

*Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888 (2002).................................................... 3

*Nacimiento Regional Water Management Advisory Com. v. Monterey County Water Resources
   Agency*, 122 Cal. App. 4th 961 (2004) ....................................................................... 12

*Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282 (2004) ................................................ 5

*Younger v. Harris,* 401 U.S. 37 (1971)................................................................... 3, 6, 7, 8

1

**State Statutes**

2

Government Code section 66499.37.................................................................................................. 2

3

Public Resources Code section 21000 (CEQA) ................................................................... 11, 12, 13

4

5

**State Rules**

6

California Rule of Court 8.104(a) and (b) ........................................................................................ 2

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

U-Haul Company of California and its affiliate Amerco Real Estate Co. (collectively "U-Haul") have provided only a partial view of the truth to this Court.  In reality, by persistently failing to adhere to its Use Permit limitation of 20 trucks allowed at its Berkeley location, U-Haul packed its lot with trucks and the overflow converted the surrounding public streets into a U-Haul parking lot.  The City and U-Haul's neighbors attempted to resolve the issue cooperatively for a decade. Their efforts were met with a complete disregard for the impact of U-Haul's operation on the community.  After the City finally revoked U-Haul's Use Permit, U-Haul launched an aggressive legal battle against the City in the State Superior, Appellate and Federal courts.  And, even when the City prevailed in the state courts, it continued to operate its Berkeley business in contravention of the City's Zoning Ordinance and the City Council's action.

A few days before the stay of the City's decision revoking U-Haul's Use Permit was to expire, U-Haul filed this action. This was purely a tactical effort to avoid the effect of the City's decision.  Indeed, when the City sought to enforce the judgment received by the state court, U-Haul insistently argued that any further state court action should be stayed because of the pendency of this action.  U-Haul's obvious maneuver was to forestall the inevitable state court determination that would result in decreased profits.  U-Haul's strategy is clear and this Court should not allow itself to be a party to any further interference with the state court process.

**ARGUMENT**

**I.    RES JUDICATA BARS ALL BUT TWO OF U-HAUL'S CLAIMS AGAINST THE CITY**

**A.    Pending Appeal in State Court Action**

The City filed this Motion to Dismiss and supporting papers on May 27, 2008.  U-Haul filed its appeal in the State Court Action on June 6, 2008.  *See* RJN ISO Defendant's Reply, Ex. 1.  The City had not received notice of U-Haul's (at the time nonexistent) appeal at the time it filed this Motion. At that time, it was the City's contention that an appeal at that point would be considered

1

1    untimely, a contention it has consistently argued in this and the State Court of Appeal.[1]   Therefore,

2    all references in the City's Opening Brief to U-Haul's failure to file an appeal and that any future

3    appeal would be untimely were accurate representations of the facts at the time and its legal conclu-

4    sions.

5          However, given the existence of the pending appeal in the State Court Action, the City con-

6    cedes that the doctrine of *res judicata* does not apply to the claims in the Complaint that are iden-

7    tical to those pending on appeal (the Second and Third Causes of Action as they specifically relate

8    to allegations that the City's action revoking U-Haul's Use Permit violated the Equal Protection and

9    Due Process Clauses).  *See* Defendant's RJN ISO Motion to Dismiss Ex. 1 at ¶¶21(e) and (f).

10          Nonetheless, *res judicata **does*** apply to:

11          1)      the claims raised in the Complaint that U-Haul voluntarily dismissed in the State

12                  Court Action and cannot now appeal (the First Cause of Action for violations of the

13                  Takings Clause[2]); and

14

15    [1]   Despite the Appellate Court's denial of the City's request for dismissal of the appeal as
untimely, the City maintains that entry of judgment in the State Court Action on February 8, 2008
bars any appeal of that action after 60 days from notice of entry of judgment per California Rule of
16    Court 8.104(a) and (b).  *See* Defendant's P&A ISO Motion to Dismiss at p. 5 and Plaintiff's RJN
ISO Opp. To Motion to Dismiss, Ex. B.
17

18    [2]   U-Haul voluntarily dismissed its claim that the City violated the Takings Clause on May 21,
2008, it cannot appeal this claim and, thus, it is subject to the Superior Court's final judgment in
19    favor of the City. See RJN ISO Reply, Ex. 2.  *Cook v. Stewart McKee & Co.,* 68 Cal.App.2d 758,
761 (1945) ["a willful dismissal terminates the action for all time and affords the appellate court no
20    jurisdiction to review … motions made prior to the dismissal."]; *Associated Convalescent Enter-
prises v. Carl Marks & Co., Inc.*, 33 Cal.App.3d 116, 120 (1973) [no appeal lies from entry of a
21    voluntary dismissal.]

22
      In addition, although the Takings claim was dismissed "without prejudice", it is now time-
23    barred pursuant to *Hensler v. City of Glendale* 8 Cal.4th 1, 22 and 26 (1994) ["A court cannot
determine that compensation is due … without determining if the development restriction is a
24    taking. It must, necessarily, rule on the validity of the ordinance, regulation, or administrative act
under which development is restricted." And "… if the challenge is to the application of the
25    regulation to a specific piece of property, the statute of limitations … runs from the date of the final
adjudicatory administrative decision. Government Code section 66499.37 establishes a 90-day
26    period of limitation for these actions".]

27
      U-Haul cites *Datta v. Staab*, 173 Cal. App. 2d 613 (1959) in support of its claim that a voluntary
28    dismissal only acts as a final judgment for *res judicata* purposes when it is entered in exchange for

2

1        2)      the claims raised in the Complaint that could have and should have been brought in

2          state court (the Second, Third, Fourth Fifth and Sixth Causes of Action).

3      And none of this negates the City's argument that those of U-Haul's claims that are not *res*

4  *judicata* must be dismissed under the *Younger* doctrine (*Younger v. Harris,* 401 U.S. 37 (1971)) as

5  will be discussed further in Section II below.  Indeed, U-Haul's reliance on the pendency of an

6  appeal in the State Court Action only highlights why *Younger* should, and does, apply here.

7

8
      **B.**      <u>**U-Haul Provides No Opposition to the Argument that It Could Have and**</u>
                 <u>**Should Have Brought All of its Claims Against the City in State Court**</u>

9      No final judgment is needed for *res judicata* to be applicable where the plaintiff could have

10  and should have brought all of its claims in state court.  *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th

11  888, 896-97 (2002); *Boeken v. Philip Morris, USA, Inc.*, 159 Cal. App. 4th 1391, 1397-98 (2008).

12  Under the doctrine of *res judicata*, "all claims based on the same cause of action must be decided in

13  a single suit; if not brought initially, they may not be raised at a later date." *Mycogen*, 28 Cal. 4th at

14  897.   "The doctrine of res judicata not only bars litigation of matters that actually were litigated in

15  the prior action, but also those matters that could have been litigated in that action." *Id.* at 1398.

16      The City has argued that U-Haul's claims in this action arise from the same alleged violation

17  of a primary right and from the same injury as alleged by U-Haul in the State Court Action and,

18  therefore, to the extent that they are not identical to claims on appeal in the State Court Action, they

19  could have and should have been litigated in that Action and, as such, are now barred under the

20  doctrine of *res judicata* pursuant to the authority provided above.

21      In response, U-Haul argues that the Complaint is "based on more than simply the City's

22  revocation of U-Haul's Use Permit.  Instead, it purports to allege an entire course of conduct

23  directed against Plaintiffs." U-Haul's Memorandum of Points and Authorities in Support of its

24  Opposition to the Motion to Dismiss  p. 3 ("U-Haul Opp.").  This is beside the point. Even assum-

25  ing U-Haul's allegations were true, U-Haul offers absolutely no justification for failing to raise

26

27

28

   consideration between the parties. U-Haul Opp. at  p. 8, fn 3.  However, the *Datta* court cites the
*Cook* ruling approvingly and does not stand for the proposition that the ONLY circumstance in
which a voluntary dismissal can function as *res judicata* is where there is consideration between the
parties. *Id.* at 620-621 citing *Cook, supra.*

3

1  these allegations in the State Court Action.  Rather, it goes to great length describing the limitations

2  of a writ proceeding. U-Haul Opp. at pp. 8-13.

3         However, this argument entirely ignores the fact that U-Haul's State Court Action was

4  styled as a *Complaint and* Writ of Mandate.  *See* Defendant's RJN ISO Motion to Dismiss Ex. 1.

5  As a result, U-Haul's entire discussion relating to the supposed limitations of a writ proceeding and

6  its preclusive effects are entirely irrelevant as to whether U-Haul could and should have raised the

7  claims alleged here in the State Court Action via its "Complaint for Injunctive Relief, Declaratory

8  Relief and Inverse Condemnation" which sought "damages in an amount to be proven at trial".  *Id.*

9  at pp.1 and 9.   It only reluctantly acknowledges the fact that it filed a complaint in the State Court

10 Action in a footnote, stating that the claims of the Complaint were "never adjudicated on the merits"

11 because it was "voluntarily dismissed without prejudice" by U-Haul.  U-Haul Opp. at p. 13, fn.4.

12        Consequently, although U-Haul's State Court Action *could* have served as a vehicle to

13 vindicate the alleged violations of its "constitutional rights to interstate commerce, to petition the

14 government for redress of grievances without retaliation, to be free from discrimination, to receive

15 equal protection under the law, as well as to enforce CEQA"[3], it simply chose to abandon this

16 Complaint and start over in federal court.  The City has provided persuasive authority that U-Haul is

17 now barred from wasting the federal court's resources in this manner and the Court should dismiss

18 its complaint on this basis.[4]

19        **C.    U-Haul Offers No Defense to the City's Demonstration that Amerco RE is in
               Privity to U-Haul for *Res Judicata* Purposes**

20

21        In another footnote, and without attempt to distinguish or contradict the authority provided

22 by the City, U-Haul simply states "none of the reasons offered by the City suffices to show privity

23 between Amerco Real Estate Company and U-Haul…" U-Haul Opp. at p. 7, fn 2.  This conclusory

24 ──────────────────

25 [3]  U-Haul Opp. At pp. 12-13.

26 [4]  Moreover, U-Haul again relies on the fact that the State Court Action involved a writ proceed-
      ing to attempt to distinguish the *Boeken* ruling. U-Haul Opp. at pp. 13-14.  As mentioned pre-
27    viously, this ignores U-Haul's own choice to file a Complaint and a Writ in one action and its
      attempt to distinguish this *Boeken*, thus, fails.

28

1  statement does not refute the authority provided by the City analyzing current law and applying it to

2  the facts in the case at hand.   In addition to this one statement, U-Haul lists several inapposite cases

3  purporting to support a blanket rule that "a business relationship does not confer privity." *Id*.   As

4  was true with U-Haul's distortion of the *Datta* ruling, the cases cited by U-Haul ***do not*** stand for the

5  proposition that a business relationship can ***never*** demonstrate privity of the parties.  Instead, the

6  courts applied the very factors discussed by the City in each of the cases.[5]

7        Moreover, U-Haul's unsupported and wholesale proposition again ignores the argument

8  provided by the City.  The City did not argue that, merely based upon their business relationship, U-

9  Haul and Amerco Real Estate Co. ("Amerco RE") are in privity to one another - although that is one

10  important factor to examine in determining whether privity exists.  Rather, it argued that privity

11  exists between them because: 1) they have an identity of interest which represents the same legal

12  rights; 2) they had the same legal interests in the State Court Action; 3) U-Haul had a strong motive

13  to assert those interests; 4) they have a sufficiently close relationship to justify claim preclusion; 5)

14  it is fair to bind Amerco with the results obtained in the State Court Action; and 6) Amerco RE

15  should reasonably have expected to be bound by the prior adjudication.

16  _____

17  [5]  *Dillard v. McKnight*, 34 Cal. 2d 209, 216 (1949) ["A person who is not a party but who controls
an action, individually or in co-operation with others, is bound by the adjudications of litigated

18  matters as if he were a party if he has a proprietary or financial interest in the judgment…"];
*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 878 (9th Cir. Cal. 2000)

19  ["Privity is an ill-defined concept that the California Supreme Court candidly acknowledges is
'essentially a shorthand statement that collateral estoppel is to be applied in a given case' where a

20  'sufficiently close' relationship exists between the losing party in the prior case and the party to be
estopped."]; *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 299 (2004) ["The concept

21  of privity has been expanded to include a relationship between the party to be estopped and the
unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of

22  the doctrine of collateral estoppel." And "circumstances must have been such that the party to be
estopped should reasonably have expected to be bound by the prior adjudication."]; *Lynch v. Glass*,

23  44 Cal. App. 3d 943, 949 (1975) ["Collateral estoppel has been given effect … against one who did

24  not actually appear in the prior action. These cases involve situations where the unsuccessful party
in the first action might fairly be treated as acting in a representative capacity for a nonparty. Thus,

25  collateral estoppel was applied against a corporation which was a mere alter ego of an individual
party in the first action, against a wife whose husband had previously asserted community rights,

26  against residents whose common interests had been represented by municipal government, against a
grantee who could have no greater rights than his grantor and co-grantee, and against an owner of

27  an automobile who surrendered its control to a drug offender."] (internal citations omitted.)

28

1    Once again, U-Haul has provided no substantive defense to the City's argument on this

2    issue, has distorted the rulings of the cases cited to extract a non-existent blanket prohibition and,

3    thus, the Court should find that privity exists between U-Haul and Amerco RE for the purposes of

4    *res judicata*.

5    **II.    U-HAUL'S COMPLAINT SHOULD BE DISMISSED BASED UPON THE**
     ***YOUNGER* DOCTRINE**

6

7          **A.    U-Haul's Claim That *Younger* Abstention Does Not Apply is Without Merit**

8          By failing to contest the City's argument, U-Haul has conceded that the three requirements

9    for *Younger* abstention are present in this case, as the City demonstrated in its opening brief: 1) the

10   state court proceedings implicate important state interests; 2) they are ongoing[6]; and 3) U-Haul had

11   an opportunity to raise its constitutional claims in state court, but failed to do so. Thus, abstention is

12   required.

13         Instead, U-Haul attempts to avoid *Younger* abstention by arguing that the City has failed to

14   show "a sufficient connection" between this case and the ongoing State Court Action.  To the

15   contrary, this case and the State Court Action both arise from the same operative facts:  the City's

16   enforcement of its zoning ordinance against U-Haul, revocation of U-Haul's use permit, and U-

17   Haul's claims that such actions are based on discriminatory and retaliatory motives. *See Gilbertson*

18   *v. Albright,* 381 F.3d 965, 983 (9th Cir. 2004) [holding that *Younger* abstention applies to damages

19   action brought by land surveyor against Oregon State Board of Examiners based on revocation of

20   surveyor's license, and that surveyor could have brought all of his constitutional claims in the state

21   court action].  Consequently, U-Haul falls back on a gross caricature of the City's argument on this

22

23   ───────────────

24   [6]   As discussed above, the State Court Action now subject to an appeal by U-Haul.  This fact
     further strengthens the City's position that *Younger* abstention is required in this case.   In addition,
     the City has been forced to seek injunctive relief in the state courts because U-Haul has refused to
25   cease operations at its Berkeley location despite the fact that the City action revoking its Use Permit
     was determined to be proper by the state court and the stay of enforcement of the  City's action was
26   terminated by the court on May 7, 2008. See Defendant's RJN ISO Motion to Dismiss, Ex.s 3 and 5
     and Defendant's RJN ISO Reply, Ex. 3.  And, in granting the City's request for a preliminary
27   injunction, a second state court judge has concluded that the City has a reasonable probability of
     success on the merits. *Id*., Ex. 4.
28

6

1    issue, in a feeble attempt to avoid the *Younger* doctrine's clear application in this case.  U-Haul

2    Opp. p.14.  These tactics have no place in a legal brief and the City will not respond further.

3        **B.        The Bad Faith Exception to the *Younger* Doctrine is Inapplicable**

4        In yet a further desperate attempt to avoid the certain application of the *Younger* doctrine to

5    its Complaint, U-Haul declares that mere mention of "bad faith" in a Complaint bars the application

6    of the doctrine. U-Haul Opp. pp. 15-16.  If this were true, the *Younger* doctrine would never apply,

7    since the party against whom it would be applied would either point to similar allegations in its

8    complaint or simply amend it to allege bad faith.

9        Rather, the exception may be applied only "where the District Court properly finds that the

10   state proceeding is motivated by a desire to harass or is conducted in bad faith."  *Huffman v. Pursue,*

11   *Ltd.*, 420 U.S. 592, 611 (1975).  The federal court plaintiff must make "*a showing*" that the state

12   court proceedings are motivated by " 'bad faith, harassment or any other exceptional circumstance

13   that would call for equitable relief.'"  *Cullen v. Fliegner*, 18 F. 3d 96, 103 (2d Cir. 1994) (emphasis

14   supplied).  "Generally, for such a showing to be made, the party bringing the state court action must

15   have no reasonable expectation of obtaining a favorable outcome."  Additionally, federal interven-

16   tion may be warranted where "a prosecution or proceeding has been brought to retaliate for or to

17   deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought

18   in bad faith or for the purpose to harass."  *Id*. at 103-04.

19       This "bad faith" exception to *Younger* does not apply in this case for at least two obvious

20   reasons.  First, the state court proceedings at issue here were brought by U-Haul, not the City.  Thus,

21   U-Haul cannot sustain a "showing" that the state court proceedings are "motivated" by the City's

22   desire to harass U-Haul.  Second, the cases cited by U-Haul all involve administrative or disciplin-

23   ary proceedings brought by the federal court defendants against the federal court plaintiffs.  *See*

24   *Cullen*, 18 F.3d at 100-101; *Gibson*, 411 U.S. at 568-69.  Here, the proceedings U-Haul is trying to

25   short-circuit are all in state court, not in front of an administrative agency/litigant. The Alameda

26   Superior Court upheld the City Council's revocation of U-Haul's Use Permit, and that judicial

27   decision is now on appeal.  In addition, the City brought was forced to bring a subsequent case

28

7

1    seeking injunctive relief to enforce the judgment in the State Court Action.  And now, a second state

2    court judge has determined that the City has a reasonable probability of success on the merits in

3    issuing a preliminary injunction in favor of the City.  See Defendant's RJN ISO Reply, Ex. 4.

4         Moreover, the "bad faith" exception to *Younger* is inapplicable here because it requires a

5    "finding" by the District Court of a motivation to harass or of bad faith.  *See Cullen*, 18 F.3d at 100-

6    101; *Gibson*, 411 U.S. at 568-69.[7]  Without actually citing to any particular provision of its

7    Complaint, U-Haul claims that the exception applies here because its Complaint alleges "that the

8    state court proceedings were brought to harass."  U-Haul Opp. p. 15.  This is just silly: the State

9    Court Action on which the City's *Younger* motion is based was filed by U-Haul, and presumably U-

10   Haul did not file its action to harass itself. To the extent U-Haul is referring to the City's injunctive

11   action in state court, the Complaint fails to allege *anything*, because U-Haul purposely sought to

12   conceal the fact of state court proceedings from the District Court.

13        Further, this case is clearly distinguishable from those cited by U-Haul.  For example, in

14   *Gibson v. Berryhill*, 411 U.S. 564, 578 (1973), the District Court concluded based upon "pleadings

15   and uncontroverted evidence"[8] that the appellants, Alabama State Board of Optometry, which had

16   initiated both administrative and state court proceedings against appellees, "was so biased by

17   prejudgment and pecuniary interest that it could not constitutionally conduct" the administrative

18

19   [7]    U-Haul cites the unpublished case of *Flowers v. Seki,* 87 F.3d 1318 (9th Cir. 1996), for the
20   proposition that there can be no abstention where defendant acted in bad faith.  However, this case
     is not certified for publication and may not be cited.  Nor is it supportive of U-Haul's position in
21   any case.

22   [8]    *Berryhill v. Gibson*, 331 F. Supp. 122, 125 (1971) ["Pleadings and uncontradicted evidence in
     the instant case indicate that Plaintiffs have been actively practicing their professions since prior to
23   1965 and that the cases against them have been pending since that time, that the individuals who
     will act as judges of their cases are largely the same individuals who in 1965 supported prosecution
24   of Plaintiffs for the very acts for which they are now being charged; that the statutes under which
     they are being prosecuted provide no precautions against the Board's acting as investigator,
25   prosecutor, and judge all in the same case and provide for no supersedeas of suspension of license,
26   pending an appeal; and that the organization charged with judging the ethics of Petitioners and with
     possibly suspending their licenses, is the State Board of Optometry, a board selected from the state's
27   100 private practitioners of optometry who must govern the state's 192 optometrists, of whom about
     92 work for some other person or entity."]
28

8

1  hearings.  U-Haul has not pleaded, nor could it plead, such similar facts nor could it provide similar

2  uncontroverted evidence.[9]

3         Rather, even though unsubstantiated by any citation to its Complaint, U-Haul argues that it

4  has alleged that *the City* brought the state court action to "harass" U-Haul (U-Haul Opp. p. 15),

5  once again ignoring the existence of its own state court action.  However, it does not allege that the

6  California Courts are biased, such that the ongoing state court proceedings cannot fairly conclude.

7  As the City has consistently maintained, U-Haul is merely unhappy with the state court's

8  determinations – those which it voluntarily pursued - and seeks a different outcome in federal court.

9  The Court should not permit such forum shopping and should, therefore, grant the City's motion to

10  dismiss.

11  **III.    U-HAUL'S FOURTH AND FIFTH CAUSES OF ACTION FAIL TO STATE A CLAIM**

12         **A.    U-Haul Has Failed to State a Claim for Violation of the Commerce Clause**

13
14         The City has provided authority in its Opening Brief[10] establishing the principle that the

15  exercise of local police power through a local zoning ordinance does not offend dormant commerce

16  clause even though it may affect interstate commerce. U-Haul has provided no contrary authority.

17  Rather, it attempts to characterize the allegations of the Complaint not as a challenge solely to the

18  City's decision to revoke its Use Permit which affects its customers ability to "use the San Pablo

19  Avenue location to pick up and/or drop off rented U-Haul trucks" [11], but as a challenge to "the

20  City's overall illegal and discriminatory campaign against U-Haul [which] has placed an

21  unreasonable burden on interstate commerce." U-Haul Opp. pp. 16-17.

22         The Fourth Cause of Action states that, because U-Haul's customers move "into and out of"

23  California and "use the San Pablo Avenue location to pick up and/or drop off rented U-Haul trucks"

24  the City's "acts and omissions" have placed an unreasonable burden on interstate commerce.

25  ───────────────

   [9]  The City will controvert U-Haul's allegations when and if the time comes.

26
   [10] See Defendant's P&A ISO Motion to Dismiss pp.12-13.

27
   [11] Complaint at ¶44.

28

9

1   Complaint at ¶¶ 44 and 45.  Therefore, the question that arises is – if U-Haul agrees that the City's

2   revocation of its Use Permit, by itself, does not violate the dormant commerce clause - what other

3   actions in combination with this legal action make up the City's alleged "campaign against U-Haul"

4   which affects their customers' ability to "use the San Pablo Avenue location"?

5           Instead of providing the Court with an answer to this question, U-Haul cites to paragraph 45

6   of the Complaint which references "the acts and omissions described herein." *Id*. p. 16.  The acts

7   and omissions alleged in the Complaint and attributed to the City are the following: the City has

8   issued citations to U-Haul and these citations have been personally delivered[12]; the City "treats U-

9   Haul worse than other similarly situated businesses" by allowing these other businesses to park on

10  City streets and other locations without the "unfair restrictions and conditions imposed by U-

11  Haul"[13]; the City "officials have ignored" U-Haul's letters and requests to meet regarding the "San

12  Pablo facility"[14]; and when the City has spoken to U-Haul, it has informed them that "the City does

13  not want U-Haul to operate in the area and it will not approve any permit application or request for

14  a variance."[15]

15          The next inquiry must be – which acts and omissions described above affect U-Haul's

16  customers ability to use the San Pablo facility?  The receipt of citations, whether personally served

17  or otherwise, cannot affect U-Haul's customers' ability to use the Berkeley location.  The allegation

18  regarding "worse treatment" necessarily encompasses either the receipt of citations for parking U-

19  Haul vehicles on the City streets and/or the conditions imposed on its Use Permit.  As previously

20  discussed, neither of these actions offends the Commerce Clause.  The City official's alleged

21  disregard for U-Haul's letters and request to meet cannot possibly affect U-Haul's customers'

22  ability to use the facility.  Finally, City officials' alleged communication to U-Haul that the City

23

24  _____

25  [12]  Complaint ¶ 23.

26  [13]  *Id*.

27  [14]  *Id*. ¶ 26.

28  [15]  *Id*.

10

1  will not approve any permit application or request for a variance also cannot affect U-Haul's

2  customers' ability to use the facility.

3       Rather, it is quite clear that the alleged conduct that U-Haul seeks to challenge in this Cause

4  of Action is the City's revocation of its Use Permit – the only alleged action that could conceivably

5  affect its customers' ability to use the Berkeley location.   As a result, based upon the authority

6  provided by the City, the indirect affect of a local action to revoke a Use Permit issued to one U-

7  Haul facility located in Berkeley pursuant to a local zoning ordinance cannot offend the dormant

8  commerce clause and, thus, U-Haul's Fourth Cause of Action fails to state a claim.

9                **B.    U-Haul Has Failed to State a Claim for Violation of CEQA**

10       U-Haul alleges that the City's failure to conduct environmental review prior to revoking U-

11  Haul's Use Permit violated CEQA. Complaint at ¶ 56. The City has argued that U-Haul's Sixth

12  Cause of Action fails to state a claim for violations of CEQA due to the fact that it is time-barred.

13  The City revoked U-Haul's Use Permit on October 10, 2007. Defendant's RJN ISO Motion to

14  Dismiss, Ex. 1.  Per California Public Resources Code Section 21167(a), U-Haul had 180 days from

15  that date to challenge the City's failure to conduct CEQA analysis.  U-Haul failed to do so and filed

16  this action on May 5, 2008.  As a result, this cause of action is time-barred.

17       In response, U-Haul offers its most untenable defense thus far and argues that the City's

18  decision revoking the Use Permit was "stayed by the Alameda Superior Court which operated to toll

19  the limitations period".  U-Haul Opp. at 19.  In support of this argument it cites *Cervantes v. City of

20  San Diego,* 5 F.3d 1273, 1275 (9th Cir. Cal. 1993). The court in *Cervantes* holds that "California

21  courts have developed a definitive three-pronged test for invocation of the doctrine of equitable

22  tolling. A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the

23  plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2)

24  lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and

25  reasonable conduct in filing the second claim. The doctrine of equitable tolling focuses on the effect

26  of the prior claim in warning the defendants in the subsequent claim of the need to prepare a

27  defense." (internal citations omitted.) "The sole issue is whether the complaint, liberally construed

28

City's Memorandum of Points and Authorities in Reply to Opp. to Motion to Dismiss
Case No. CO8-02313

1    in light of our 'notice pleading' system, adequately alleges facts showing the *potential* applicability

2    of the equitable tolling doctrine." *Id*. at 1277.

3         It is manifest that U-Haul's Complaint contains no allegations that would demonstrate even

4    potential applicability of the equitable tolling doctrine.  U-Haul has conceded this point through its

5    lack of *any citation* to its Complaint which would support application of this doctrine.  Nor does U-

6    Haul advance the argument that, if it was allowed to amend its Complaint, it could allege facts that

7    would satisfy this doctrine.

8         Rather, it employs its now familiar strategy of citing authority that has no application to the

9    facts or law at issue and then failing to analyze or apply it in any manner whatsoever.  Highlighting

10   this point is the fact that U-Haul provides *no example* of this doctrine being applied in a CEQA

11   case.  In fact, there are none as applying such a doctrine to a CEQA case would be contrary to the

12   legislative intent.

13        Those courts which have examined CEQA's specific statute of limitations have articulated

14   the legislature's desire to "expeditiously" resolve CEQA challenges to agency actions.  *Nacimiento*

15   *Regional Water Management Advisory Com. v. Monterey County Water Resources Agency*, 122

16   Cal. App. 4th 961, 965, (2004) ["Allegations that the public agency failed in its duty to make an

17   adequate environmental assessment must be expeditiously resolved, and CEQA contains a number

18   of procedural provisions evidencing legislative intent that the public interest is not served unless

19   CEQA challenges are promptly filed and diligently prosecuted." "For example, CEQA sets short

20   statutes of limitations of only 30 to 180 days in length, requires a settlement conference within 45

21   days of service of the petition, and grants trial preference over all other civil actions. Patently, there

22   is legislative concern that CEQA challenges, with their obvious potential for financial prejudice and

23   disruption, must not be permitted to drag on to the potential serious injury of the real party in

24   interest."] (internal citations omitted.)

25        The Court held that "the legislative intent … would be defeated" if the Court allowed a

26   CEQA case to proceed where it found it was not filed within the statute of limitations because of

27   attorney error.  *Id*. at 968.  The same reasoning would apply in this instance.

28

1    Thus, it is impossible for U-Haul to allege facts that would satisfy the three-pronged test for

2    invocation of the doctrine of equitable tolling.  And, even if it could, the application of the doctrine

3    to a CEQA cause of action would be contrary to the legislative intent of that statute and, in such a

4    case, courts have refused to grant relief.  As a result, U-Haul's Sixth Cause of Action for violations

5    of CEQA fails to state a cause of action.[16]

6                                    **CONCLUSION**

7           For all the foregoing reasons, the City requests that the Court dismiss the Complaint

8    of U-Haul Co. of California and Amerco Real Estate Company with prejudice.

9

10   Dated:  August 20, 2008                    ZACH COWAN, Acting City Attorney

11

12                                        By:  _____/s/_____

13                                             Zach Cowan
                                              Attorneys for Defendant City of Berkeley

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27   [16]   Since U-Haul cannot overcome the CEQA time bar, the City will not address U-Haul's further
     argument regarding the applicability of a categorical exemption to the City's decision to revoke its
28   Use Permit.

13